UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| JEANIE WHISENANT, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 5:19-cv-285-GMB ) |
| ANDREW M. SAUL, Commissioner, Social Security Administration, | ) ) ) ) |
| Defendant. | ) |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Jeanie Whisenant filed an application for disability insurance benefits in 2016. Her alleged disability onset date is November 21, 2016. Whisenant's application was denied at the initial administrative level. She then requested a hearing before an Administrative Law Judge ("ALJ"). The ALJ held a hearing on October 25, 2017 and denied Whisenant's claims on April 24, 2018. Whisenant requested a review of the ALJ's decision by the Appeals Council, which declined review on October 24, 2018. As a result, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration (the "Commissioner") as of October 24, 2018.

Whisenant's case is now before the court for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Under 28 U.S.C. § 636(c)(1) and Rule 73 of the Federal Rules of Civil Procedure, the parties have consented to the full jurisdiction of a

United States Magistrate Judge. Based on its review of the parties' submissions, the relevant law, and the record as a whole, the court concludes that the decision of the Commissioner is due to be AFFIRMED.

## I. STANDARD OF REVIEW

The court reviews a Social Security appeal to determine whether the Commissioner's decision "is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). The court will reverse the Commissioner's decision if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). The court "may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner," but rather "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (citation and internal quotation marks omitted). "Even if the evidence preponderates against the Secretary's factual findings, [the court] must affirm if the decision reached is supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Moreover, reversal is not warranted even if the court itself would have reached a result contrary to that of the factfinder. *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

The substantial evidence standard is met "if a reasonable person would accept

the evidence in the record as adequate to support the challenged conclusion." *Holladay v. Bowen*, 848 F.2d 1206, 1208 (11th Cir. 1988) (quoting *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983)). The requisite evidentiary showing has been described as "more than a scintilla, but less than a preponderance." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The court must scrutinize the entire record to determine the reasonableness of the decision reached and cannot "act as [an] automaton[] in reviewing the [Commissioner's] decision." *Hale v. Bowen*, 831 F.2d 1007, 1010 (11th Cir. 1987). Thus, the court must consider evidence both favorable and unfavorable to the Commissioner's decision. *Swindle v. Sullivan*, 914 F.2d 222, 225 (11th Cir. 1990).

The court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Grant v. Astrue*, 255 F. App'x 374, 375–76 (11th Cir. 2007) (citing *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)). There is no presumption that the Commissioner's conclusions of law are valid. *Id.*

## II. STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has

lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 416(i). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The claimant bears the burden of proving that he is disabled, and is responsible for producing evidence sufficient to support his claim. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

A determination of disability under the Social Security Act requires a five-step analysis. 20 C.F.R. § 404.1520(a). The Commissioner must determine in sequence:

(1) Is the claimant presently unable to engage in substantial gainful activity?
(2) Are the claimant's impairments severe?
(3) Do the claimant's impairments satisfy or medically equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
(4) Is the claimant unable to perform her former occupation?
(5) Is the claimant unable to perform other work given her residual functional capacity, age, education, and work experience?

*See Frame v. Comm'r, Soc. Sec. Admin.*, 596 F. App'x 908, 910 (11th Cir. 2015). "An affirmative answer to any of the above questions leads either to the next question, or, [at] steps three and five, to a finding of disability. A negative answer to any question, other than at step three, leads to a determination of 'not disabled.'"

4

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986) (quoting 20 C.F.R. § 416.920(a)−(f)). "Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citing *Gibson v. Heckler*, 762 F.2d 1516 (11th Cir. 1985)).

### III.  FACTUAL BACKGROUND

Whisenant was 52 years old at the time of the ALJ's decision. R. 25 & 130. She lives with her husband in Decatur, Alabama, and completed one year of college. R. 36 & 168.  Previously, she worked as a nurse's aide and a lathe operator. R. 47. Whisenant testified at the hearing that she assists her husband, who is diabetic, with remembering to take his medications and checking his blood sugar twice daily. R. 37.  Her husband is physically able to clothe, bathe, and otherwise care for himself, but Whisenant must drive for him because he is unable to drive a car. R. 37. Whisenant testified that her husband helps her to perform household tasks like laundry, cleaning, and cooking. R. 37.

Whisenant testified that her primary limitations are an inability to stand for more than 15 minutes or to walk more than 15 feet. R. 37.  She suffers from pain in her knees, hips, and lower back due to osteoarthritis and degenerative disc disease. R. 38.  She treats her pain with anti-inflammatory medication but is unable to afford more extensive treatment because she does not have health insurance. R. 38.  She

5

also suffers from depression and anxiety, which she attributes to her childhood leukemia. R. 40. At least once per week, she trembles, has trouble breathing, and cries for 20 to 30 minutes. R. 40. She struggles to bend, stoop, reach, or squat. R. 40–41. Whisenant attends church services on Sundays and Wednesdays, and travels to a friend's house once per week to play cards. R. 45. She also sews, paints, and crochets at home. R. 45.

On January 3, 2017, x-rays of Whisenant's lumbar spine taken at The Imaging Center in Decatur, Alabama revealed grade I anterolisthesis in two of her vertebrae.[1] R. 293. Dr. Michael D. Jokich determined that Whisenant "most likely" had "chronic and . . . degenerative disc disease and degenerative hypertrophic facet disease." R. 293. Whisenant's treatment records also document complaints of knee and back pain. R. 264–89. On January 4, 2017, Whisenant saw certified nurse practitioner ("CRNP") Johanna Langford, whose assessment included hypertension, disc degeneration, spondylolisthesis,[2] and lower back pain. R. 264. On December 7, 2016, CRNP Langford assessed Whisenant with lower back pain and back muscle spasms. R. 266. In August 2016, CRNP Langford's assessment included pain in

---

[1] Anterolisthesis occurs when the upper vertebral body, "a thick drum-shaped area in front" of each vertebra, "is positioned abnormally compared to the vertebral body below it" and "slips forward on the one below." *Anterolisthesis*, CEDARS SINAI, https://www.cedars-sinai.edu/Patients/Health-Conditions/Anterolisthesis.aspx (last visited March 13, 2020).

[2] "Spondylolisthesis is a spinal condition that affects the lower vertebrae (spinal bones). This disease causes one of the lower vertebrae to slip forward onto the bone directly beneath it. It's a painful condition but treatable in most cases." *Spondylolisthesis*, Healthline, https://www.healthline.com/health/spondylolisthesis (last visited March 13, 2020).

both knees and spinal pain. R. 271. Whisenant returned to CRNP Langford in March 2017 and June 2017, when the assessments included spondylolisthesis, disc degeneration, lower back pain, and pain in both knees. R. 282 & 286.

On February 3, 2017, Whisenant saw Dr. Marlin D. Gill for a disability examination. R. 277. Dr. Gill observed that Whisenant's gait was normal, she walked without assistance, she could get on and off the exam table, she had full range of motion in her joints, and her back appeared normal with no tenderness. R. 278. He also found that her legs appeared normal with "good muscle tone" and that her knees appeared "normal and symmetrical." R. 278. He observed that Whisenant's right knee was not tender despite Whisenant's complaints of pain with movement. R. 278. Dr. Gill found that, while standing, Whisenant could "squat down one-half way and come back up again," and could "walk on her tiptoes and heels." R. 278. Based on Dr. Gill's examination, his assessment included lower back pain due to degenerative disc disease and facet arthrosis and right knee pain due to an unknown cause. R. 279.

The ALJ issued his decision on April 24, 2018. R. 25. Under step one of the five-step evaluation process, the ALJ found that Whisenant has not engaged in substantial gainful activity since November 21, 2016. R. 18. The ALJ concluded that Whisenant suffers from the severe impairments of degenerative disc disease and obesity under 20 C.F.R. § 404.1520(c). R. 18. The ALJ then found at step three of

7

the analysis that none of Whisenant's impairments satisfy or medically equal the severity of one of those listed in the applicable regulations. R. 20.

At steps four and five, the ALJ found that Whisenant has the residual functional capacity ("RFC") to perform light work,[3] except that she "can occasionally climb ramps and stairs, balance, stoop, knee, crouch, and crawl," and cannot "climb ropes, ladders, or scaffolds." R. 21. The ALJ found that Whisenant's "impairments could reasonably be expected to cause the alleged symptoms," but concluded that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." R. 22. Ultimately, the ALJ determined that Whisenant is able to perform past relevant work as lathe operator. R. 23. Therefore, the ALJ concluded that Whisenant is not disabled within the meaning of the Social Security Act. R. 24–25. Based on these findings, he denied Whisenant's claims. R. 25.

## IV. DISCUSSION

The sole issue Whisenant presents on appeal is whether the ALJ properly evaluated the credibility of her allegations of pain. Doc. 14 at 5. Social Security regulations provide that a claimant's subjective complaints of pain cannot alone establish disability. Rather, the regulations describe additional objective evidence

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b).

8

that permits a finding of disability. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1529. Interpreting these regulations, the Eleventh Circuit has articulated a "pain standard" that applies when a claimant attempts to establish disability through her own testimony of pain or other subjective symptoms. When establishing disability through her allegations of pain, a claimant must satisfy two parts of the Eleventh Circuit's three-part pain standard: "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002).

"[I]f a claimant testifies to disabling pain and satisfies the three part pain standard, the ALJ must find a disability unless the ALJ properly discredits the claimant's testimony." *Crow v. Colvin*, 36 F. Supp. 3d 1255, 1259 (N.D. Ala. 2014). A claimant's testimony that is supported by medical evidence and satisfies the pain standard "is itself sufficient to support a finding of disability." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). But an ALJ is free to determine that a claimant's testimony is not credible. *See Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005); *Crow*, 36 F. Supp. 3d at 1259. Thus, after the pain standard is satisfied, the "ALJ must make credibility determinations regarding a claimant's claims of pain" to determine whether the claimant truly is disabled. *Fries v. Comm'r of Soc. Sec.*

9

*Admin.*, 196 F. App'x 827, 833 (11th Cir. 2006); *Crow*, 36 F. Supp. 3d at 1259.

When determining the credibility of a claimant's testimony as to her symptoms, the ALJ must follow a two-step process. *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1308 (11th Cir. 2018). First, the ALJ must determine "'whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms.'" *Id.* (quoting Social Security Ruling ("SSR") 16-3). Next, the ALJ determines "'whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities.'" *Id.* (quoting SSR 16-3). SSR 16-3 further provides:

> In considering the intensity, persistence, and limiting effects of the claimant's symptoms, the ALJ is to examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record.

SSR 16-3.

"If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so." *Wilson*, 284 F.2d at 1255. "The ALJ is not required explicitly to conduct a symptom analysis, but the reasons for his or her findings must be clear enough that they are obvious to a reviewing court." *Carrell v. Berryhill*, 2019 WL 1696698, at *4 (N.D. Ala. Apr. 17, 2019) (citing *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995)). Otherwise, the testimony will be accepted as true. *Id.*

The pain standard requires that the articulated reasons be supported by substantial evidence. *Hale*, 831 F.2d at 1012 ("Implicit in this rule is the requirement that such articulation of reasons by the Secretary be supported by substantial evidence."). In any event, the "question is not . . . whether [the] ALJ could have reasonably credited [the claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011). "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote*, 67 F.3d at 1562.

Here, the ALJ properly considered and discredited Whisenant's subjective complaints of pain. He noted that, despite her complaints of lower back pain, the treatment notes did not "demonstrate any significant physical limitations on examination." R. 22; *see also* R. 239–86. He pointed out that during Whisenant's examination with Dr. Gill, she walked normally with no assistance, could get on and off the examination table, used her hands and arms normally, could squat halfway, and had a full range of motion. R. 22. Dr. Gill also observed that Whisenant's "back looked normal and there was no tenderness," and that she could walk "on her tiptoes and heels." R. 22 & 278. The ALJ correctly noted that there were "minimal objective medical findings in the record" submitted by Whisenant. R. 22.

Whisenant argues that an "ALJ cannot pick and choose among a doctor's records to support his own conclusion." *Chambers v. Astrue*, 671 F. Supp. 2d 1253,

1258 (N.D. Ala. 2009). This is a correct statement of the law, but here the ALJ pointed to Whisenant's testimony concerning her daily activities as a justification for discrediting her testimony concerning the limiting effects of her symptoms, and the Social Security "regulations do not . . . prevent the ALJ from considering daily activities at the fourth step of the sequential evaluation process." *Marcia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987). He noted that Whisenant's daily activities—which include cooking, assisting in the care of her husband, sewing, crocheting, household chores, and attending church services—constitute a "somewhat normal level of daily activity and interaction." R. 22. Whisenant also argues that there is substantial evidence in the record corroborating her complaints of pain. For example, two examinations in 2016 revealed bilateral knee crepitus.[4] R. 266 & 271. But, as just discussed, Dr. Gill concluded that by February 2017 Whisenant had no knee tenderness, was able to partially squat, and walked normally. R. 278.

Importantly, "the mere existence of . . . impairments does not reveal the extent to which they limit [a claimant's] ability to work or undermine the ALJ's determination in that regard." *Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005). Whisenant has not shown that her knee or back pain "resulted in [any] major

---

[4] Crepitus in the knee causes "crackling and popping sounds," and is "common and usually painless." *Arthritis Knee Noise: Crepitus and Popping Explained*, HEALTHLINE, https://www.healthline.com/health/osteoarthritis/crepitus (last visited March 13, 2020). It also can be a symptom of osteoarthritis, rheumatoid arthritis, or infectious arthritis if it is accompanied by pain, which can be treated by medications, ice packs, a knee brace, or physical therapy. *Id.*

functional loss," and the ALJ properly considered her complaints of pain in his RFC assessment. *Id.*; *see also* R. 22–24. Given the evidence of record, the court cannot conclude that the ALJ was "clearly wrong" to discredit Whisenant's testimony concerning the intensity and persistence of her symptoms. *Werner*, 421 F. App'x at 939. Accordingly, the court finds that that the ALJ's decision that Whisenant did not meet her burden to establish disability was based on substantial evidence.

## V. CONCLUSION

For these reasons, the court concludes that the Commissioner's decision is supported by substantial evidence and based upon the proper legal standards. Accordingly, the decision of the Commissioner is AFFIRMED.

A final judgment will be entered separately.

DONE and ORDERED on March 23, 2020.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE